25478.   GRAY *v*. WATSON *et al.*

DECIDED NOVEMBER 21, 1936.   ON REHEARING, DECEMBER 18, 1936.

*Len B. Guillebeau, Thomas J. Methvin,* for plaintiff in error.
*Augustine Sams, Maddox & Futral, Harold Hirsch, Marion Smith, Welborn B. Cody,* contra.

BROYLES, C. J.   Francis M. Watson Jr., by next friend, brought suit against Mrs. May Inman Gray, W. T. Robinson, doing business as Subway Parking Company, and the executors of the estate of D. Greenfield. Verdict and judgment for the plaintiff were rendered.   Mrs. Gray filed a motion for new trial, which was overruled; and on this judgment she assigns error.   While this decision deals with the case as it pertains to Mrs. Gray, it is well to state that all of the defendants came to this court by separate bills of exceptions; and a decision in the *Greenfield* case has been rendered, to which reference is hereinafter made.

The facts as disclosed by the evidence are that the defendant Mrs. Gray owned a lot at the northwest corner of Forsyth and Hunter Streets in Atlanta; that at a previous time she had filled in this lot and made it level with the top of a rock wall on the north side of her lot; that she rented this lot to defendant Robinson who used it as a public parking lot; that immediately north of this rock wall on the edge of the parking lot was a pit or ditch approximately ten feet deep and two and one half feet wide, which was located (except for a few slight variations in the irregular rock wall) on the property of the Greenfield estate; that on the north side of the pit or ditch was a brick building belonging to the Greenfield estate, the pit or ditch being between the parking lot and the brick building; that the plaintiff, a minor, twelve years of age, went with his mother and a Miss King to this parking lot and, *for a consideration,* parked their car there; that they *parked*

*at the place where they were directed to park by the person in charge;* that it was dark when they came back to get the car; that the man who ran the parking lot came with a flashlight to help them find the car, but did not go all the way with them, as they located the front of their car by the headlights of other cars; that the light from other cars "was only now and then as cars would go around;" that as the mother of the plaintiff was opening the door next to the driver's seat, Miss King and the plaintiff were standing there, and the plaintiff walked around behind the car to get in on the other side, and in so doing fell into the ten-foot pit or ditch which had rough rock sides and a concrete or rock bottom, thereby sustaining certain injuries for which he sued. The evidence showed that the place where plaintiff's mother was *directed* to put the car was *near the pit;* that there was no red light or other warning to notify the patrons of the public parking lot that the pit was there; that there was no guard-rail or other obstruction to keep people from stepping into the pit in the dark, though a guard-rail has been put there since; and that the top of the rock wall, which was the top of the pit on that side, was *level with the rest of the parking lot.* It is undisputed that the pit and the parking lot along the side of the pit were unlighted and dark; and there was evidence that the entire parking lot was unlighted. The fact that the operator of the parking lot was using a flashlight to locate cars would indicate that the lot was not lighted; and Miss King testified: "There were not any lights in the parking lot at all that I remember."

The plaintiff in error contends that the child was negligent in walking around the car to get in on the other side, and in walking behind the car. In the absence of notice of danger, there is no negligence in walking around an automobile in order to get in on the other side. This is done practically every minute of the day throughout the civilized world. Neither is there any negligence in going behind the car rather than in front of it. On the contrary, it is ordinarily more prudent to walk behind a car than to walk in front of it; particularly so if some one is in the act of opening the door next to the driver's seat, preparatory to getting in, as in the instant case. It is a matter of common knowledge that numerous accidents result from walking in front of an automobile about to be started. The evidence shows that the boy had

no notice of, and knew nothing about, the pit to the rear of the car, and the law does not require him to anticipate this unusual condition. He had a right to assume, in the absence of notice or knowledge to the contrary, that the public parking lot was free from pitfalls or other instrumentalities of danger. The plaintiff was in no way responsible for the pit, or the ground around the pit not being lighted; nor was he in any way to blame for a guard-rail not being there to prevent people from falling into the pit or ditch. This was a public parking place used by the public, and the plaintiff was an invitee for hire, the mother having paid a consideration for the privilege of parking there, and having parked at the place to which she was directed by the person in charge. The proved conduct of the plaintiff would not have been negligent even had he been an adult; and being a minor, he could be held only to that degree of diligence which a child twelve years of age should exercise; and certainly a child of his years would not be required to anticipate that the parking place suddenly dropped off into a ten-foot pitfall. The plaintiff, having no notice or warn-ing of the pit, was not negligent in walking around behind the car to get in on the other side; and he being an invitee on a public parking lot, and his mother having paid a consideration for park-ing, and having parked where she was directed to park by the person in charge of the parking lot, and the defendant, Mrs. Gray, being the one who filled up the lot level with the wall, thus creating the dangerous instrumentality, and having maintained it thus with-out guard-rails or lights to prevent the patrons of the lot from falling into the pit or ditch, the defendant is liable under the Code, § 105-401, which declares: "Where the owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries occasioned by his failure to exercise ordinary care in keeping the premises and approaches safe."

In *Greenfield* v. *Watson*, 54 *Ga. App.* 9 (187 S. E. 183), the executors of the Greenfield estate being codefendants with Mrs. Gray and Mr. Robinson in the trial of this case, the decision of this court in favor of the Greenfields did not hold or intimate that the plaintiff was in any way negligent, or that Mrs. Gray was not negligent; but, on the contrary, it was strongly indicated that

Mrs. Gray was negligent and liable for the plaintiff's injuries. That decision was based on three things: (1) That the excavation on the Greenfield property was not in close proximity to a street or sidewalk. (2) "The plaintiff was neither their express nor implied invitee." (3) "It appears that the depression was not created by the defendants [executors of the Greenfield estate], but by the act of the *owner of the parking lot* in filling in and raising his lot." (Italics ours.) In the opinion in that case the court said that there was no liability on the Greenfields "where this depression on the lot of the defendant landowners [executors of the Greenfield estate] did not result from any act by them, but was created *solely* by the act of the *owner of the adjoining parking lot* (italics ours) in filling in with dirt and raising the level of the parking lot to even it with the top of the wall; where the defendant landowners [executors of the Greenfield estate] neither owned nor maintained any part of the wall from which the plaintiff fell, but merely by written agreement permitted the parking-lot owner to construct on the lot of the defendants a cement brace to prevent the wall from toppling or leaning over on the lot of the defendants, with a provision that no right or easement would ever be claimed by reason of such permission." In *Williamson* v. *Southern Railway,* 42 *Ga. App.* 9 (155 S. E. 113), cited in the *Greenfield* case, the plaintiff was not even in a public place when injured, but was on a private driveway; and the court held that "under the facts and circumstances set forth in the petition, such as might reasonably have misled the plaintiff into a belief that the private paved driveway was but a continuation of the public street, there was what amounted to an implied invitation on the part of the defendant to enter upon its premises; and such being the case, it was incumbent upon the defendant to use reasonable and ordinary care in keeping the premises and approaches safe." "The facts and circumstances set forth in the petition" showed that the defendant was negligent "in constructing and maintaining the driveway or roadway adjoining and as a continuation of the street, *without placing railing* or a barricade at the end thereof, and *not giving notice* of such condition *by placing lights or other warning signals,* and in *maintaining* such an alleged *dangerous condition* without giving notice or warning of the *abrupt ending* of the driveway." (Italics ours.)

Ground 1 of the amendment to the motion for new trial alleges that the court erred in failing to give in charge to the jury a form of verdict for the defendant, and for all of the defendants. The court charged: "If you should find that either of these defendants was not negligent, . . then you would find a verdict then and there for such defendant or defendants. . . If you find that the plaintiff has not carried the burden of proof as to negligence, in the manner that I have described, against any of the defendants, then you would stop right there and write a verdict in favor of all the defendants. . . If you should find in favor of one defendant and against the others, you should name those defendants against whom you do find, and then you would say 'and we find in favor of' (naming the other defendant against whom you do not find), if you do find in favor of one or more. . . The form of your verdict would be, 'We, the jury, find in favor of' (naming the defendant or defendants in whose favor you find)." Under the charge as given, the failure of the court to give the form, "We, the jury, find in favor of all the defendants," was not harmful to the defendants. Neither was the charge in reference to forms of verdicts an expression of opinion that the plaintiff should recover. Ground 2 complains that the court failed properly to instruct the jury in reference to the plaintiff's negligence, and his failure to exercise ordinary care. The court clearly instructed the jury, not only that the burden was on the plaintiff to prove any negligence of the defendants, but also that if they found the defendants or any of them negligent, the plaintiff must have been in the exercise of ordinary care to protect himself from such negligence; and if by the exercise of ordinary care he could have avoided the consequences of defendants' negligence, if any, he could not recover. The charge as a whole was fair. "'A charge, torn to pieces and scattered in disjointed fragments, may seem objectionable, although when put together and considered as a whole it may be perfectly sound. The full charge being in the record, what it lacks when divided is supplied when the parts are all united.'" *Harrison* v. *Hester*, 160 *Ga.* 865 (7, 8) (129 S. E. 528). The cases cited by counsel for the plaintiff in error are differentiated by their facts from the instant case. In *Bridger* v. *Gresham*, 111 *Ga.* 814 (35 S. E. 677), the plaintiff himself closed the door of a lighted room, which shut off any light from a back

veranda which was not lighted and from which he fell. Moreover, the plaintiff went to the office of the defendant's hotel to sell berries for his own benefit, while in the instant case the plaintiff was an invitee at a public parking lot and paid a consideration for parking there. The grounds of the motion for new trial show no cause for reversal of the judgment. The evidence amply authorized the verdict, and the court did not err in overruling the motion.

*Judgment affirmed. MacIntyre and Guerry JJ., concur.*

### ON MOTION FOR REHEARING.

BROYLES, C. J. Counsel for the plaintiff in error insist that a rehearing should be granted, (1) "Because the court overlooked the fact that this court had ordered a new trial as to one of the joint defendants in said case," the estate of D. Greenfield; and (2) because the court overlooked a line of decisions holding that "a verdict for damages against two or more defendants as tortfeasors should be set aside when it is, as against any one of the defendants thus held liable, unwarranted by the evidence." In other words, counsel contend that since this court reversed the judgment in *Greenfield* v. *Watson*, 54 *Ga. App.* 9 (supra), it must necessarily reverse the judgment as to the other joint defendants, including Mrs. Gray, the movant in this motion for rehearing. We assume that through courtesy the counsel employed the usual term "overlooked" in reference to the case of *Greenfield* v. *Watson*, as that case was cited and discussed at length in the original opinion in this case. The effect of the ruling in the *Greenfield* case is that the Greenfield estate was not a joint tort-feasor, because the dangerous instrumentality (the pit or ditch into which the plaintiff fell) "was created *solely* by the act of the owner of the adjoining parking lot in filling in with dirt and raising the level of the parking lot to even it with the top of the wall." (Italics ours.) That decision further held *as a matter of law*, "under the undisputed testimony," that the Greenfield estate was not liable for the plaintiff's injury. The three defendants in the trial court filed separate motions for new trial, and came to this court by separate bills of exceptions. The evidence amply supported the verdict against Mrs. Gray. The verdict said that the plaintiff was damaged in a fixed sum, and that damage remains the same regardless of which one of the defendants is responsible for it. In

furtherance of justice and the attainment thereof without undue delay, our statutes provide that "it shall be within the power of the appellate court to award such order and direction to the cause in the court below as may be consistent with the law and justice of the case" (Code, § 6-1610), "and to grant judgments of affirmance or reversal, or *any other order, direction, or decree* required therein." § 24-3901 (2). Italics ours.

The oldest Supreme Court decision we have been able to find on this subject, and therefore the controlling one, is *Irwin* v. *Riley*, 68 *Ga*. 605. It was there held, that while the judge of the superior court "could not refuse a new trial on condition that the plaintiff should release and cancel the judgment as to one of the defendants, as to whom the evidence failed to support the verdict, the power of the Supreme Court [or of the Court of Appeals] is more ample as to moulding the case in the court below. This court may award such order and direction to the cause in the court below as may be consistent with the law and justice of the case. The verdict and judgment being right as to two of the defendants, and unsupported as to the third, it is therefore ordered that a new trial be granted, unless the plaintiff will dismiss his suit as to the last named defendant, and in that event that it be refused." In the opinion it was said: *"But in relieving Turner, one of the defendants, we do not think the justice or law of the case demands that a new trial should be had, vacating the verdict against the other two defendants; that would operate unjustly to the rights of the plaintiff.* The court below entertaining these views sought to mete out justice to all parties by refusing the new trial as to Irwin and Hammock on condition that plaintiff would release and discharge Turner from the judgment, and so ordered. We question the authority of the circuit judge to impose such terms. . . *But the authority of this court,* as conferred by statute, in the judgments here pronounced, *is not so limited. In any cause tried here, it is within its power 'to award such order and direction to the cause in the court below as may be consistent with the law and justice of the case.'* Code, § 4284" (1933, § 6-1610). Italics ours. In *Harris* v. *Hull,* 70 *Ga*. 831, 838, it was said: "One great purpose in establishing this court was to terminate suits, and with this view, it is made its duty not only to grant judgments of affirmance or reversal, but any other order, direction or decree

required, and if necessary to make a final disposition of the cause (Code, § 218), and it is empowered to give to the cause in the court below such direction as may be consistent with the law and justice of the case." In *Austin* v. *Appling*, 88 *Ga.* 54 (6) (13 S. E. 955), it was held: "The recovery being correct as to one of the defendants and obviously incorrect as to the other two, the judgment is affirmed as to the former but reversed as to the latter, with direction that the action be dismissed as to them." In the opinion it was said: "The evidence, we think, is sufficient to sustain the verdict as to the defendant Dobbs. We have already shown it can not be sustained as to the other two defendants. Inasmuch, therefore, as the verdict might have been found against Dobbs alone, the same result may, we think, be properly accomplished by confining it to him. Accordingly, as to Dobbs, the judgment is affirmed; and as to Austin and Boylston it is reversed, and we direct that as to them the action be dismissed." In *Louisville & Nashville R. Co.* v. *Peeples,* 136 *Ga.* 448 (71 S. E. 805), the suit was against a railroad company and an individual; and the judgment (against both defendants) was reversed as to the railroad company and affirmed as to the individual. In *Adamson* v. *McEwen,* 12 *Ga. App.* 508 (77 S. E. 591), where four defendants were jointly sued, a verdict was rendered in favor of one defendant, and against the other three. The three losing defendants filed a *joint* motion for new trial, which was overruled, on which judgment error was assigned; and this court reversed the judgment as to only one of the three defendants. If the appellate court can reverse the judgment as to only one of three defendants where a *joint* motion for new trial is filed; then, a fortiori, it can reverse the judgment as to one defendant only where the appellants themselves separate their cause by filing separate motions for new trial and coming to this court on separate bills of exceptions. See also *Western Union Telegraph Co.* v. *Owens,* 23 *Ga. App.* 169 (6), 174 (98 S. E. 116).

While headnotes 2 and 3 in *Finley* v. *Southern Ry. Co.,* 5 *Ga. App.* 722 (64 S. E. 312), cited by movant, if construed alone and without regard to headnote 1 and to the entire opinion, might be misleading, the decision as a whole, which clarifies and shows the reasons for the rulings, furnishes good authority for the contention of the defendant in error in the case sub judice. In head-

note 1 it was held: "The Court of Appeals is clothed with power to direct any order necessary for the proper adjudication of a cause." This ruling was stressed throughout the opinion. It appeared that Finley, a minor, by next friend, sued the Southern Railway Company, together with Oscar Turner and Walter Hagan (employees of the company), and a verdict was rendered in favor of the plaintiff. This court said: "We entertain no doubt of the prerogative of this court, in a proper case, to make a tentative, or even a final, disposition of a case by appropriate direction. In fact we have several times exercised the power. . . The Supreme Court [or the Court of Appeals] . . is empowered 'to hear and determine all causes, civil and criminal, that may come before it, and to grant judgments of affirmance or reversal, or any other order, direction, or decree required therein, and, if necessary, to make a final disposition of the cause. . . 'It shall be within the power of the Supreme Court [or the Court of Appeals] to award such order and direction in the cause in the court below as may be consistent with the law and justice of the case.' . . In fact, at no time has the court questioned its constitutional right to direct a final disposition of a cause in the lower court. . . We apprehend it to be within the appropriate jurisdiction of this court to exercise directory powers in any case where there is no issue of fact, . . 'and it is empowered to give the cause in the court below such direction as may be consistent with the law and justice of the case.' . . The framers of our organic law foresaw that cases might arise in which a court of last resort could well be entrusted with the power, not only of . . moulding judgments by the application of the law to admitted facts, . . but also of summarily directing, in a proper case, a final judgment in behalf of one of the parties to the cause." The ruling in the *Finley* case cited and followed *Irwin* v. *Riley,* supra, where it was held that the judge of the superior court could not release or cancel the judgment against one of several joint defendants, but the appellate court could do so; and that in relieving one defendant, it was not necessary "that a new trial should be had vacating the judgment against the other two defendants; [as] that would operate unjustly to the rights of the plaintiff."

On the motion for rehearing in the *Finley* case, this court said: "The motion for rehearing invokes the exercise of this court's

power to make a final disposition of a cause. It is asked that this court direct the judge of the city court to dismiss the case as to Turner and Hagan, and let the verdict stand as against the defendant company, and that the judgment be reformed accordingly. The motion for rehearing is based upon the allegation that the court overlooked the case of *Irwin* v. *Riley,* 68 *Ga.* 605. We assume that the learned counsel for plaintiff in error intended to say that the court, perhaps, misconceived the decision in that case; for it is cited in the original opinion. In passing upon this case, we dealt at some length with the question of the Court of Appeals's directory power, and think we made clear that this court possesses, in any proper case, the power to give final disposition to a case. We did not lose sight of the fact that it was within the power of the court to give *the present case* the disposition now sought by the plaintiff in error in his motion for rehearing; and while, incidentally to our discussion of the subject, we quoted from the request of the plaintiff in error, as embodied in the brief, we did not mean to hold, nor can it be inferred that the court did hold, that in giving direction to a cause, the exercise of its power is limited to the request of either or both of the parties. The direction to be given should be that which is right and proper in the particular case. . . We can not say that the verdict against the Southern Railway Company was demanded by the evidence; and that the judge would have erred in granting a new trial if he had possessed the power (which this court has) to eliminate the other two defendants, Hagan and Turner, from the judgment. If we could say this, we would feel it our duty to direct that Hagan and Turner be stricken from the judgment, and that judgment be entered up in the city court against the defendant railway company in accordance with the finding of the jury against it." It is not amiss to say that the judgment affirmed in the *Finley* case was the first grant of a new trial, and that the errors complained of were not of such materiality and gravity as to authorize a reversal of such a judgment. As shown by the foregoing quotation, the court clearly held that it had the power to release one or more joint defendants and leave other defendants bound by the judgment.

*Gilstrap* v. *Leith,* 24 *Ga. App.* 720 (102 S. E. 169), is cited in a quotation contained in the motion for rehearing in the instant case. In that case it was held that a verdict set aside as to one

joint defendant must, on motion, be set aside as to the other. However, there are two vital and material things which differentiate that case from the case sub judice: (1) The cause of action was based on the fact that the defendants "conspired together" to slander the plaintiff. In the instant case there was no conspiracy, and, under the ruling of this court in the *Greenfield* case, there was no joint act of negligence by the defendant released (the Greenfield estate) and the other defendants. (2) It was the trial judge who set aside the verdict as to one of the defendants, and not the appellate court; and under the *Irwin* case, supra, the judge of the trial court was without authority to do this. The ruling in *Hendricks* v. *Henderson,* 38 *Ga. App.* 298 (143 S. E. 777), relied on and quoted from by the movant, is in conflict with decisions of the Supreme Court and with older decisions of this court, and therefore is not binding authority. Be it said to the credit of Judge Bell (now Justice Bell), who wrote the opinion in that case, that it was he who realized its ruling was erroneous, and he had a memorandum placed in the reports of this court in which he said, in part, that he is now convinced that the court "committed egregious error in the *Hendricks* case, and the case ought to be overruled or 'killed' at the first opportunity." While counsel for movant had no notice of this memorandum, they had "constructive notice" of the older decisions which take precedence over that case. Under the authorities hereinbefore cited, and particularly under the Code, §§ 6-1610, 24-3901, and *Irwin* v. *Riley,* supra, and the facts of this case, there is no doubt that this court has the power to render such judgment in the case "as may be consistent with the law and justice of the case," including a reversal as to one defendant and an affirmance as to others. The verdict and judgment being right as to Mrs. Gray, and, according to the decision heretofore rendered, unsupported as to the estate of D. Greenfield, we remold our original judgment of affirmance in this case; and the judgment is now affirmed on condition that the plaintiff dismiss his suit as to the estate of D. Greenfield. If this be not done, the judgment is reversed.

*Rehearing denied. MacIntyre and Guerry, JJ., concur.*