293 F.2d 237
 Joaquina QUINONES, Administratrix of the Estate of Sixto Quinones, Dec. Appellant in No. 13,431,
v.
TOWNSHIP OF UPPER MORELAND, Appellant in No. 13,432,
Miles POTTER, Defendant and Third-Party Plaintiffs,
v.
Patrick McCABE, James McCabe, Sr., and Bernard McCabe, Individually and as co-partners trading as McCabe Brothers.
 No. 13431.
 No. 13432.
 United States Court of Appeals Third Circuit.
 Argued March 21, 1961.
 Decided July 5, 1961.
 
 Michael A. Foley, Philadelphia, Pa., for Township of Upper Moreland.
 Edward R. Becker, Philadelphia, Pa. (Herman A. Becker, Becker & Becker, Philadelphia, Pa., on the brief), for Joaquina Quinones.
 Arthur B. Walsh, Jr., Langhorne, Pa., for Patrick McCabe and others.
 Before KALODNER, STALEY and HASTIE, Circuit Judges.
 KALODNER, Circuit Judge.
 
 
 1
 Sixto Quinones, a laborer, employed by McCabe Brothers, contractors, ("McCabe") was killed when an unshored trench in which he was working caved in. The trench was being excavated by McCabe as part of a sewer construction project pursuant to a written contract awarded it by the Township of Upper Moreland, Pennsylvania ("Township").
 
 
 2
 Joaquina Quinones, Administratrix of Sixto's estate, ("plaintiff") brought suit, charging negligence, against Township and Miles Potter, township engineer, under the Survival and Wrongful Death statutes of Pennsylvania. Township and Potter impleaded McCabe as third-party defendants on theories of common law and contractual indemnity.
 
 
 3
 Jurisdiction is based on diversity. Pennsylvania law governs.
 
 
 4
 The jury returned a verdict of $35,000 in favor of plaintiff against Township and Potter and found in favor of McCabe against Township and Potter in the third-party action. The trial judge denied Township's motion for judgment n. o. v. and/or a new trial with respect to the verdict in favor of plaintiff and further denied Township's motion for a new trial with respect to the verdict in favor of McCabe in the third-party action. The trial judge, however, granted Township's motion for judgment n. o. v. against McCabe to the extent of McCabe's Pennsylvania workmen's compensation liability on the ground that it was concurrently negligent with Township in failing to construct shoring in the collapsed trench. Finally, the trial judge granted Potter's motion for judgment n. o. v. with respect to the verdict against him in favor of plaintiff, on the ground that the testimony did not sustain it. The opinion of the trial judge is reported at D.C.E.D.Pa.1960, 187 F.Supp. 260.
 
 
 5
 In finding against Township with respect to plaintiff's verdict the trial judge held that there was sufficient evidence to sustain the jury's finding that Township "had retained sufficient control [with respect to McCabe's performance of the contract] to make it liable for the absence of shoring." In doing so he pointed to the fact that the failure to provide shoring was in violation of a Pennsylvania statute, 43 P.S. § 25-2(f) and regulations of the Pennsylvania Department of Labor and Industry.[1]
 
 
 6
 The trial judge rejected Township's contention that under Pennsylvania law it was engaged in a governmental function in the construction of the sewer and was thus endowed with immunity from suit and held that Township was acting in a proprietary function with attendant liability.
 
 
 7
 In Appeal No. 13,431 plaintiff seeks reversal of the judgment of n. o. v. entered by the trial judge on the jury's verdict in its favor against Potter, the township engineer, asserting that the evidence sustained the verdict.
 
 
 8
 In Appeal No. 13,432 Township challenges the denial below (1) of its motion for judgment n. o. v. against the plaintiff, and (2) of its motion for judgment n. o. v. for full indemnity against McCabe should we find its first contention without merit.
 
 
 9
 The Township premises its appeal on its first point on these contentions: (1) the evidence was insufficient to establish any control on its part in the performance of McCabe's contract; (2) plaintiff's decedent was guilty of contributory negligence as a matter of law in working in an unshored trench; (3) the construction of a sewer is in the exercise of a governmental function with attendant governmental immunity, and (4) Township's negligence, if any, was secondary, and McCabe's negligence "primary" and accordingly Township, under Pennsylvania law, is entitled to full indemnity; the trial judge erred in finding the negligence in failing to shore the trench "concurrent" on the part of Township and McCabe.
 
 
 10
 It must immediately be said, with respect to Township's point that plaintiff's decedent was guilty of contributory negligence, that it was not raised below either during the course of the trial or in the motions for a new trial or judgment n. o. v. against plaintiff, and for that reason alone cannot, and will not, now be entertained. Halprin v. Mora, 3 Cir., 1956, 231 F.2d 197; Penn v. Glenn, 6 Cir., 1959, 265 F.2d 911. Moreover, it is well-settled in Pennsylvania that "Contributory negligence can only be declared judicially where it is so clear that there is no room for fair and reasonable persons to disagree", Bauer v. Sacks, 1947, 355 Pa. 488, 492, 50 A.2d 351, 354, and on review of the record here "No one could read the * * * printed record in this case and fairly assert that there is no room for fair and sensible men to conclude from the evidence that the plaintiff [decedent] was free of contributory negligence." Cooper v. Heintz Mfg. Co., 1956, 385 Pa. 296, 306, 122 A.2d 699, 704.
 
 
 11
 Before proceeding to consideration of the other points presented by Township's appeal and that of the plaintiff in Appeal No. 13,431, the facts as adduced by the testimony may be summarized as follows:
 
 
 12
 First as to contract between Township and McCabe:
 
 
 13
 The contract entrusted the entire sewer construction project to McCabe;[2] it was wholly within McCabe's power to hire, fire, control and supervise its employees;[3] the contract specifically provided that shoring of trenches was to be performed in compliance with Pennsylvania laws and regulations;[4] the work was to be performed in accordance with the specifications set forth in the contract[5] and Township's "Engineers" [Harris, Henry & Potter, Inc., an engineering firm] was authorized to insure compliance by McCabe with the specifications and "to decide all questions which may arise with the Contractor relative to * * * the manner, performance * * * and acceptable fulfillment of the contract on the part of the Contractor."[6]
 
 
 14
 With respect to the happening of the accident it is undisputed that the trench was then about 25 feet deep and four or five feet wide; it was not shored as required by the Pennsylvania statute and its pertinent regulations; decedent was operating a drill at the bottom of the trench when its walls collapsed and a large quantity of dirt buried him; he died almost instantly of suffocation and a skull fracture, and the absence of shoring was the proximate cause of decedent's injuries and death.
 
 
 15
 Township and McCabe do not dispute here, nor did they below, that the failure to shore the trench in violation of the Pennsylvania statute and regulations constituted negligence on the part of the party responsible. Township's contention on the score of responsibility is premised on its view that sufficient evidence was not adduced at the trial upon which a jury could have found that it had retained such control over the performance of the contract as to make it liable for the negligent death of an employee of the independent contractor — McCabe. The sum of McCabe's position is that while it was negligent in failing to shore the trench Township was "concurrently negligent" in that respect because of its "control" in the performance of the contract and that such "concurrent" negligence operated under Pennsylvania law to deprive Township of any right to indemnity; that at most, Township was entitled to indemnity only to the extent of its workmen's compensation obligation under Pennsylvania decisions.
 
 
 16
 In Spinozzi, etc. v. E. J. Lavino and Company, 3 Cir., 1957, 243 F.2d 80 at pages 82-83, we said:
 
 
 17
 "The Pennsylvania courts have recognized that the employer [of an independent contractor] should be liable where he has retained control of some part of the work * * * and his failure to exercise that control with reasonable care causes harm to others" and that "It is the jury's function to determine whether the employer retained control so as to make him liable."
 
 
 18
 Here the contract provided that Township's Engineer, Harris, Henry & Potter, Inc. was authorized to insure compliance by McCabe with the specifications of the contract which required shoring in accordance with Pennsylvania law, and further the evidence disclosed that pursuant to such provision, Mark E. Bradley, the Engineer's inspector, visited the job "two or three times a week"[7]; Bradley exercised such inspection as was necessary to see to it that McCabe complied with the specifications;[8] Bradley knew that the trench was not shored the day before the accident (he was not there the day it happened); he had never given instructions "that shoring was to be put in."[9]
 
 
 19
 What has been said makes it clear that there was ample basis for the jury's fact-finding that Township (1) had "retained control" in the performance of McCabe's contract, and (2) was negligent in not having required McCabe to shore the trench in conformity with Pennsylvania law and its Regulations for Trenches and Excavations. Under the circumstances here the violation of the regulations plainly constituted negligence on the part of the Township.
 
 
 20
 Township's contention that it is immune from liability because it was engaged in a governmental function in the construction of the sewer does not require extended discussion. We agree with the trial judge that under Pennsylvania law the construction of a sewer is a proprietary function and not a governmental function and that accordingly Township's claim of immunity must fail.
 
 
 21
 Coming now to McCabe's contention that Township was "concurrently negligent" with it in failing to shore the trench, and that under Pennsylvania law Township is not entitled even to the limited indemnity awarded by the trial judge:
 
 
 22
 The contention stated must be resolved on the evidence as to the factual situation developed at the trial and applicable Pennsylvania legal principles.
 
 As to the evidence:
 
 23
 The contract provided that "The work in every respect * * * shall be under the charge and in care of the Contractor and at his risk. He shall properly safeguard against any or all injury or damage to the public * * * and shall alone be responsible for any damage or injury from his undertaking of this work to any person or persons or thing connected therewith. * * *"
 
 
 24
 Further, the Specifications which were part of the Contract provided that "Trenches shall, at all times, be properly and adequately sheeted and braced to prevent accidents, caving of the sides of the trench. * * *", and the Contract specifically provided that "The Contractor, at all times shall observe and comply with * * * all State laws * * * and regulations, in any manner affecting the conduct of the work. * * *" The regulations referred to, it will be recalled, required shoring of trenches.
 
 
 25
 McCabe's foreman, Peter McCabe, on cross-examination testified that it was McCabe's sole "responsibility * * * to decide whether shoring was placed or whether it wasn't."[10]
 
 
 26
 Following the accident McCabe placed shoring on the trench here involved.
 
 
 27
 On the score of the latter, as we pointed out in footnote 4 at page 83 of 243 F.2d in Spinozzi, etc. v. E. J. Lavino and Company, supra, evidence of precautions taken after an accident while not admissible to prove negligence "is admissible to show * * * control of the premises." (Emphasis supplied.)
 
 
 28
 As to applicable Pennsylvania legal principles:
 
 
 29
 Builders Supply Co. v. McCabe, 1951, 366 Pa. 322, 77 A.2d 368, 24 A.L.R.2d 319 states the Pennsylvania law to be as follows with respect to the right to indemnity. It was there said, 366 Pa. at page 325, 77 A.2d at page 370:
 
 
 30
 "The right of indemnity rests upon a difference between the primary and the secondary liability of two persons each of whom is made responsible by the law to an injured party. It is a right which enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable. * * *"
 
 
 31
 and at pages 327-328 of 366 Pa., at page 371 of 77 A.2d:
 
 
 32
 "So, where the owners of a store property who maintained an opening in their sidewalk were obliged to pay damages for injuries received by a pedestrian who fell into the opening and was injured, recovery of indemnity was allowed from a contractor employed by them to take waste material from the premises, and who, in the course of the work, removed the iron grills above the opening and did not properly guard it; obviously the contractor's was the primary, the property owners' the secondary liability for the injury which occurred. * * *
 
 
 33
 "Without multiplying instances, it is clear that the right of a person vicariously or secondarily liable for a tort to recover from one primarily liable has been universally recognized. But the important point to be noted in all the cases is that secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible." (Emphasis supplied.)
 
 
 34
 Applying the principles stated to the instant case we are of the opinion that the testimony establishes that McCabe's liability for failure to shore the trench was primary and that of Township secondary and accordingly, under the indemnity provisions of the contract between the parties, Township is entitled to a judgment of indemnity against McCabe Cabe in its third-party action to the full extent of plaintiff's verdict against Township.
 
 
 35
 There remains for disposition plaintiff's Appeal No. 13,431 which seeks reversal of the judgment n. o. v. entered by trial judge on the jury's verdict against Potter, the township engineer. On review of the record we are in accord with the trial judge's disposition in this respect.
 
 
 36
 For the reasons stated the Order of the court below entering judgment in favor of the plaintiff against Township in the sum of $35,000, reduced by McCabe's workmen's compensation liability to the plaintiff, with costs, and entering judgment n. o. v. in favor of Potter against the plaintiff, will be affirmed; the entry of judgment n. o. v. in favor of Township against McCabe, for contribution to the extent of the latter's workmen's compensation liability will be vacated with directions to enter judgment n. o. v. in favor of Township to the full extent of Township's liability under the judgment in favor of the plaintiff against Township when Township has satisfied that judgment by its payment to the plaintiff.
 
 
 
 Notes:
 
 
 [1]
 Regulations for Trenches and Excavations, Department of Labor and Industry (1956 ed.)
 
 
 [2]
 "Article 17 — Contractor's Liability"
 "The work in every respect, from the execution of the contract bond and during its progress until final acceptance, shall be under the charge and in care of the Contractor and at his risk. He shall properly safeguard against any or all injury or damage to the public * * * and shall alone be responsible for any damage or injury from his undertaking of this work to any person or persons or thing connected therewith. He shall indemnify and save harmless the * * * Township * * * and all its officers, agents and employees from all suits or actions at law of any kind * * * in connection with this work * * *"
 
 
 [3]
 Article 10 of the Contract "Materials, Appliances and Employees."
 
 
 [4]
 Specification "B", "Sewer Construction" "11 — Shoring: — Trenches shall, at all times, be properly and adequately sheeted and braced to prevent accidents, caving of the sides of the trench. * * *"
 "Article 20. Observance of Laws.
 "The Contractor, at all times, shall observe and comply with all Federal and State laws and local ordinances and regulations, in any manner affecting the conduct of the work * * * and shall indemnify and save harmless the * * * Township * * * and all its officers, agents and servants against any claim or liability arising from or based on the violation of any such law, ordinance, regulation, order or decree, whether by himself or his employees."
 
 
 [5]
 Specification "B"
 
 
 [6]
 "General Condition — Article 32 — Authority of Engineer"
 
 
 [7]
 Testimony of Hepolito Mojica Rodriquez, a McCabe employee on the job
 
 
 [8]
 Testimony of Peter McCabe
 
 
 [9]
 Testimony of Mark E. Bradley
 
 
 [10]
 P. 112, N.T.:
 "Q. McCabe, I have a couple questions. Whose responsibility was it to decide whether shoring was placed or whether it wasn't? Was it yours or the Township's? A. That was mine, my responsibility."